THEODORE W. ZALESKI, ET AL., PLAINTIFFS-APPELLANTS, v. LOCAL 401 OF THE UNITED ELECTRICAL RADIO AND MACHINE WORKERS OF AMERICA, DEFENDANT-RESPONDENT, AND THE SINGER MANUFACTURING COMPANY, DEFENDANT.

Argued November 20, 1950—Decided January 2, 1951.

110

*Mr. Abraham L. Friedman* argued the motions for appellants. *Mr. Samuel L. Rothbard,* of counsel. *Messrs. Rothbard, Harris & Oxfeld,* attorneys.

*Mr. Morton Stavis* argued the motions for the respondent association. *Mr. William Rossmoore,* on the brief.

The opinion of the court was delivered by

HEHER, J. The action was brought by seven members of the defendant local union, on behalf of themselves and all other employees of The Singer Manufacturing Company at its plant in Elizabethport, New Jersey, who had executed "check-off" authorizations and were "similarly situated," to enjoin Singer from paying to the Union, not only plaintiffs' own membership dues, but also the dues of all other member-employees of Singer "similarly situated," some 4,000 in number, regardless of their wish, and to restrain the Union from disbursing moneys received pursuant to the check-off authorizations subsequent to November 2, 1949. An interlocutory injunction staying the payment of such wage deductions to the Local, on behalf of plaintiffs and "those similarly situated," was unanimously reversed by the Appellate Division. 9 *N. J. Super.* 206. Plaintiffs thereupon appealed to this court from the judgment of reversal, and now move for a stay of that judgment pending the appeal, to the end that the injunction shall remain in force during the pendency of the appeal. The defendant Union countered with a motion for the dismissal of the appeal on the ground that the judgment of the Appellate Division is not appealable either under the Constitution of 1947 or the rules of court adopted under the authority therein granted.

This is the factual situation: The Local was and is the collective bargaining agent of the member-employees of Singer at its Elizabethport plant. The Local's parent body, The United Electrical Radio and Machine Workers of America, was an affiliate of the Congress of Industrial Organizations. On November 2, 1949, the parent body and all its locals were expelled from the C. I. O. for reasons of internal policy; and the contention in essence is that the member-employees of Singer consented to the check-off on the basis of the Local's affiliation with the C. I. O. and their consequent membership in that body, who by reason thereof had an interest in the dues and initiation fees, and the "consideration" for the "continuing validity" of the check-off was the "continuing affilia-

tion" of the defendant Local and its parent union with the C. I. O., and so there was "a failure of consideration" and "a violation of the condition" upon which "the continuing force and validity" of the check-off depended. The check-off authorization was made pursuant to the labor contract with Singer, and was by its terms irrevocable for one year. Resignation from the Union would terminate the check-off, but would not jeopardize the retiring member's employment, for the labor contract has no "maintenance of membership" clause or similar provision. Dues are payable monthly at the rate of $18 per year. Plaintiffs seem to concede that only two months' dues are directly involved. It is clear that the controversy grows out of more fundamental issues of internal management which are not determinable at the present stage of the litigation. But the merits of the disagreement as to policy are not determinative of the present issue. A majority of the Local's membership has indicated opposition to the suit. The dues constitute the major, if not the sole, source of the Local's revenue.

The basic contention is that this interlocutory appeal does not fall within any of the specific categories of Article VI, Section V, paragraph 1 of the Constitution of 1947, and so the appeal is not only without constitutional sanction but is, indeed, forbidden by that provision of the organic law. It is said also that such appeals are not comprised within *Rule* 1:2–1, and that *Rule* 1:2–2 "does not give a right to appeal in categories of cases beyond those described in *Rule* 1:2–1." The argument is that these two rules "read together exhaust the constitutional provisions," and that *Rule* 1:2–2 "means clearly that if the judgment be one which if final would permit an appeal under *Rule* 1:2–1, an appeal might also be had if a judgment is interlocutory and the appellant satisfies the further requirements of that rule regarding the maintenance of the *res* and the prevention of irreparable injury or mischief." The purpose of *Rule* 1:2–2, we are told, "is to avoid the prior situation wherein appeals were permissible only with respect to final judgments;" and it is said that plaintiffs "read

*Rule* 1:2–2 to give greater rights to appeal upon interlocutory judgment than upon final judgment," a thing "absurd on its face."

■■ This is a misconception of the Constitution and the rules. The cited provision of the Constitution enumerates the appealable causes: those appealable of right, including causes in which there is a dissent in the Appellate Division of the Superior Court and such as may be "provided by law," and causes certified by the Supreme Court to the Superior Court and, where provided by rules of the Supreme Court, to the county courts and the inferior courts. There is no constitutional bar to an interlocutory appeal to preserve the *res;* appeals are not limited to final judgments by that provision or any other. But *Rule* 1:2–1 confines appeals in causes of the constitutional categories to final judgments: appeals of right in the enumerated causes and in such causes as may be "provided by law," and on certification by the Supreme Court to the Superior Court, the county courts and all other courts pursuant to *Rule* 1:5. The obvious purpose of *Rule* 1:2–2 is to provide for appeals from interlocutory judgments, orders or determinations "when necessary to preserve and maintain the *res* or *status quo* pending final judgment and prevent irreparable injury or mischief." Interlocutory appeals are thereby limited to the emergent class. Unless such be the meaning of the rule, it can have no real significance. Certainly, the rule does not have reference to certification, for that procedure is limited to final judgments when invoked by the aggrieved party. The Supreme Court, of course, may certify any judgment on its own motion. See *Steiner v. Stein,* 2 *N. J.* 367 (1949). Without such provision, there would be no way of protecting the *res* pending final judgment, unless by certification, and there is no such procedure. *Rule* 1:2–1 permits certification of final judgments only. And *Rule* 1:5–2 provides that certification to the Appellate Division "is not a matter of right, but of sound judicial discretion, and will be allowed on final judgments only where there are special and important reasons therefor."

■ The evident design of *Rule* 1 :2–2 is to grant an appeal of right from an interlocutory judgment or order whenever necessary to safeguard the *res,* and thus to effectuate the constitutional mode of review, by appeal or certification, as the case may be, by maintaining the *res* until the cause is finally adjudicated. Unless the *res* be preserved, the final judgment might well be rendered ineffective and the constitutional review denied. For example, there is an absolute right of appeal in all.causes where there is a dissent in the Appellate Division; but such a division on final judgment cannot be had until the judgment is rendered. Also, where the final determination of a cause concerns a constitutional question, there is an appeal of right. And the integrity and efficiency of the certification process is likewise involved. The protection of the *res* is the very essence of the right of review; a review would be futile if the superintending tribunal were bereft of the power to render an efficacious judgment by the destruction or impairment of the subject matter. If the appellate court loses by this means the faculty of fully vindicating such right and of remedying such wrong as may be found on review, the substance of the right is denied. *Pennsylvania Railroad Co. v. National Docks and New Jersey Junction Connecting Railway Co.,* 54 *N. J. Eq.* 647 (*E. & A.* 1896); *Helbig v. Phillips,* 109 *N. J. Eq.* 546 (*E. & A.* 1932); *Christiansen v. Local 680 of the Milk Drivers and Dairy Employes of New Jersey,* 127 *N. J. Eq.* 215 (*E. & A.* 1940). Such is the reason of *Rule* 1 :2–2.

■ *Rule* 1 :2–12 has no pertinency. It permits an application, by motion, for an order granting or denying a stay only where an appeal has been taken or a petition for certification filed; and certification, as we have seen, may be had by the aggrieved party only for the review of a final judgment. This rule plainly has reference to a stay *pendente lite* by the appellate court where an appeal or a petition for certification is pending, which would include an appeal from an interlocutory judgment or order under *Rule* 1 :2–2. In a word, the latter rule recognizes that the subsistence of the *res* pending

final judgment may in the particular case relate to the substance of the constitutional right of review. A review where the *res* has been destroyed would be a vain form.

We perceive no danger to the *res* here. So far as appears, the plaintiffs speak for themselves alone. Their payments by the check-off device will constitute but a trivial part of the Local's income from dues. These payments may be recovered if plaintiffs eventually prevail. Indeed, resignation of membership will terminate the obligation to pay dues. What they seek is continued membership in the Local without the corresponding obligation to pay dues. If the Local be enjoined from collecting dues from its members, the result may very well be paralysis of function. Plaintiffs are not authorized to speak for the membership or a majority of the members; and it is not within their province to take such drastic action in the face of the opposition of a majority of the Local's members. The very principle of the protection of the *res* invoked by plaintiffs calls for the maintenance of the *status quo* until the fundamental question at issue is finally determined and justifies the Local in its opposition to a continuance of the injunction. The restraint would interfere substantially with the conduct of the Local's affairs. In short, there is no showing of the likelihood of irreparable injury to plaintiffs by the dissolution of the interlocutory injunction. The *res* is not in jeopardy.

The appeal is dismissed.

*For granting motion*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.