41 N.J. Super. 561 (1956)
125 A.2d 523
LEONORA ROMANO, PASQUALE ROMANO AND ROCCO CARUSO, EXECUTORS AND TRUSTEES OF THE ESTATE OF ANTONIO MAGLIO, DECEASED, PLAINTIFFS, LEONORA ROMANO, PLAINTIFF-APPELLANT,
v.
LOUISE MAGLIO, ET ALS., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 5, 1956.
Decided September 21, 1956.
*565 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Robert V. Carton argued the cause for Leonora Romano (Messrs. Durand, Ivins & Carton, attorneys).
Mr. Ira C. Moore, Jr. (Messrs. Whiting, Moore & Phillips, attorneys; Mr. C. Alan Phillips, of counsel), Mr. James L.R. Lafferty (Messrs. Steelman, Lafferty & Rowe, attorneys) and Mr. Samuel A. Bloom argued the cause for various defendants-respondents.
The opinion of the court was delivered by CLAPP, S.J.A.D.
Mrs. Pasquale Romano, one of the daughters of Antonio Maglio and a beneficiary under his will, moved before the Superior Court, Chancery Division, to set aside an order entered by it approving certain sales of his lands. The motion was denied. She now appeals from the order denying her motion, claiming that the order *566 approving the sales was void because of a lack of jurisdiction over her and a denial of procedural due process.
In 1952 she, Pasquale Romano and Rocco Caruso, who were appointed by the will as executors and trustees, commenced this action as an action of ejectment. Four other daughters of the testator counterclaimed demanding, inter alia, that the court "take jurisdiction of the administration" of his estate, that plaintiffs be removed as trustees and that the will be construed, particularly Paragraph Eleventh:
"I direct my Trustees to give first preference in the sale of any part or all of my real estate to my children."
It may be noted, in passing, that this provision of the will had been previously construed to a certain extent by the Chancery Division in an unreported case, Forbringer v. Romano, affirmed on other grounds, 10 N.J. Super. 175 (App. Div. 1950).
On February 27, 1953, pursuant to a stipulation of settlement, a final judgment was entered by consent on the complaint in ejectment and the counterclaim. The judgment directed the trustees to sell "all of the real estate" left by the testator within 90 days, as more fully specified in the judgment, and it further provided in paragraph 6:
"Any of the parties hereto shall have leave to apply to the court for further directions or relief at the foot of this judgment."
Thereafter, during the next 17 months the counterclaimants, obviously proceeding under paragraph 6 of the judgment, filed four petitions in the cause: two of them leading to orders attempting to effect a sale of the lands; the third leading to orders removing the above-mentioned executors and trustees for malfeasance and adjudging them in contempt of court; and the fourth to an order appointing the Howard Savings Institution, as substituted administrator with the will annexed and substituted trustee, and also joining Mrs. Romano and others, individually, as parties defendant to the counterclaim (she had theretofore been a party merely in her capacity as one of the executors and trustees).
*567 Thereafter the Howard Savings Institution, obviously also applying for further directions at the foot of the final judgment, filed a petition dealing with contracts entered into by petitioner, subject to the approval of the court, for the sale of all the testator's realty. In the petition was set forth paragraph Eleventh of the will, which, as above stated, gave the children a first preference in the sale of any part or all of the testator's realty. The petition demands judgment approving these sales and authorizing the petitioner to make conveyances of the lands to the respective purchasers free from any preference. An order to show cause issued on the petition, and on February 11, 1955 an order was entered in accordance with the demands of the petition.
Eleven and a half months later Mrs. Romano moved to set aside this order, but the motion was denied by Judge Sullivan by order of March 23, 1956. She then made a motion before this court under R.R. 2:2-3 for leave to appeal from the order of March 23, 1956. At that posture of the case she assumed the order was interlocutory.
We have not yet had occasion to discuss our practice under that rule, and it may be helpful to make some general observations on the matter. We grant leave under the rule only "in the exceptional cases where, on a balance of interests, justice suggests the need for a review" of an interlocutory order. Appeal of Pennsylvania Railroad Co., 20 N.J. 398, 409 (1956). Indeed, the power given to this court by the rule is very sparingly exercised by us. In the usual case, the application to us is made prior to a final judgment, and we then have regard for the strong public interest in uninterrupted proceedings at the trial level with a single and complete review. Appeal of Pennsylvania Railroad Co., supra; Trecartin v. Mahony-Troast Construction Co., 21 N.J. 1, 6 (1956); City of Newark v. Division of Tax Appeals, Dept. of Treasury, 7 N.J. 8, 12 (1951).
We will not grant leave to appeal in order to correct minor injustices, such as those commonly attendant on orders erroneously granting or denying interrogatories or discovery. Redress for such grievances can be had only through an *568 appeal from the final judgment, provided the judgment results from the interlocutory orders complained of. Clock v. Public Service Co-ordinated Transport Co., 8 N.J. Super. 20, 22 (App. Div. 1950). However, we may grant leave to appeal where some grave damage or injustice may be caused by the order below, such as may occur when the trial court grants, continues, modifies, refuses or dissolves an injunction, appoints a receiver or refuses an order to wind up a pending receivership or to take the appropriate steps to accomplish the purposes thereof, such as directing a sale or other disposal of property held thereunder. We may also be induced to grant leave where the appeal, if sustained, will terminate the litigation and thus very substantially conserve the time and expense of the litigants and the courts, as in the case where the order attacked determines that the court or agency below has jurisdiction of the subject matter or person. There is a variety of other situations in which we may entertain an interlocutory appeal. Thus, see Zaleski v. Local 401, United Elec. etc., Workers of America, 6 N.J. 109, 114 (1951).
However, we grant leave to appeal only where there is some showing of merit and justice calls for our interference in the cause. In the present case the circumstances were very fully laid out on the motion, and it became evident that the appeal lacked merit.
Accordingly, we denied leave to appeal from the order of March 23, 1956. Mrs. Romano, then taking the position that the order was in fact a final judgment, appealed to us therefrom as of right. If it was final, the appeal was within time. Defendants, however, contend it was not final, and they moved to strike the appeal on that ground. We might say that no one claims that Mrs. Romano is precluded from taking this appeal because of having assumed an inconsistent position in the course of the litigation, and we therefore do not consider the point.
If the order of February 11, 1955 approving the sales was final, then the order of March 23, 1956, refusing to open it, is also final. Palm Beach Mercantile Co. v. *569 Ivers, 2 N.J. Super. 5, 9 (App. Div. 1949); Defiance Fruit Co. v. Fox, 76 N.J.L. 482, 487 (E. & A. 1908) (in which an order refusing to open a mechanic's lien judgment is referred to as a final decision reviewable by a writ of error). But if the 1955 order is interlocutory, the 1956 order is also interlocutory. Cf. Mueller v. Seaboard Commercial Corp., 5 N.J. 28, 31 (1950).
An order approving the sale of lands, such as the 1955 order, would have been held to be interlocutory under former practice. In re Mortgage Guaranty Corporations', etc., Act, 131 N.J. Eq. 120 (E. & A. 1942), dealing with an order approving a trustee's sale; cf. Fidelity Union Trust Co. v. North Jersey Poultry Co., 123 N.J. Eq. 259 (E. & A. 1938), the leading case on the general subject, dealing with an order confirming a sale in a foreclosure suit. On the other hand, an order setting aside a foreclosure sale has been held to be "final in its nature." Chamberlain v. Larned, 32 N.J. Eq. 295, 297 (E. & A. 1880), citing Blossom v. Milwaukee & C.R.R. Co., 1 Wall. 655, 658, 68 U.S. 655, 658, 17 L.Ed. 673, 674 (1863). In other jurisdictions an order confirming a sale is held to be a final judgment. Butterfield v. Usher, 91 U.S. 246, 23 L.Ed. 318, 319 (1876); Sage v. Central R. Co. of Iowa, 96 U.S. 712, 714, 24 L.Ed. 641, 643 (1878); see Blossom v. Milwaukee & C.R.R. Co., supra (these last three cases must be taken to have overruled any intimations to the contrary in Whiting v. Bank of United States, 13 Pet. 6, 38 U.S. 6, 10 L.Ed. 33 (1839), a case strongly relied on in North Jersey Poultry Co., supra); Madison & Kedzie State Bank v. Cicero-Chicago C. Co., 351 Ill. 180, 184 N.E. 218, 222 (Sup. Ct. 1932); Seder v. Kozlowski, 311 Mass. 30, 40 N.E.2d 14, 19 (Sup. Jud. Ct. 1942); 4 C.J.S., Appeal and Error, § 135; 59 C.J.S., Mortgages, § 746.
There was this to be said for the rule of North Jersey Poultry Co. under the former practice:
"* * * if a party aggrieved by such order [confirming sale] was allowed to appeal therefrom within a year from the date of confirmation the purchaser * * * would be subjected to harassment *570 for an unconscionable length of time never contemplated by the legislature." Fidelity Union Trust Co. v. North Jersey Poultry Co., 123 N.J. Eq. 259, 263 (E. & A. 1938).
But this is not a consideration today; the time for appeal from a final judgment now is not a year, but 45 days, five days more than the period once allowed for an appeal from an interlocutory order, as stated in North Jersey Poultry Co.
There is another major difference between the practice then and now. An interlocutory order of the Court of Chancery, such as an order confirming a sale, was appealable as of right in 1937. Whereas the order of February 11, 1955 confirming the sales, if it be interlocutory, was perhaps not appealable at all under R.R. 2:2-3 as it then stood (the appeal, if sustained, would not "terminate the litigation"  the litigation had already been terminated); and today it would be appealable under the rule only in the discretion of this court. Moreover, the order before us, if interlocutory, differs from most all interlocutory orders for they precede a final judgment and can be reviewed as of right on appeal from the judgment, to the extent above noted.
We do not need here to pass upon the nature of an order confirming sale in a foreclosure suit. Such an order has been referred to as
"`but a mode of executing the original decree, like the award of an execution at law.'" Fidelity Union Trust Co. v. North Jersey Poultry Co., 123 N.J. Eq. 259, 262 (E. & A. 1938) supra.
The order of February 11, 1955 approving the sales here can hardly be said to be "like the award of an execution" on the judgment of February 27, 1953. We conclude that the order of March 23, 1956 is final.
We come then to Mrs. Romano's principal contentions on the appeal. First she claims that the order of February 11, 1955 confirming the sales is void as against her because she was not given notice of it.
In support of that contention she says that service should have been made under R.R. 4:4-4 or 4:4-5, apparently *571 on the theory that the proceeding to confirm the sale was or should have been a plenary action. There is no merit to the point. The proceeding for the approval of the sales was a part of the action commenced in 1952 by the complaint and counterclaim above mentioned. It was a motion in that action, brought on by petition and order to show cause, pursuant to leave given by paragraph 6 of the final judgment, above quoted.
It is established practice in certain classes of equitable cases to allow the parties to include in the judgment a provision giving them leave to apply summarily on motion for further directions at the foot of the judgment upon points reserved or connected with the case. Kase v. Kase, 18 N.J. Super. 12, 16 (App. Div. 1952); Fidelity Union Trust Co. v. Union Cemetery Assn., 134 N.J. Eq. 254, 258 (Ch. 1943), affirmed 134 N.J. Eq. 539, 541 (E. & A. 1944); Bartlesville Zinc Co. v. Indian Territory Illuminating Oil Co., 14 F.2d 133 (D.C.N.J. 1926); Stovall v. Banks, 10 Wall. 583, 589, 77 U.S. 583, 589, 19 L.Ed. 1036, 1037, 1038 (1871); Dickinson, Chancery Precedents, 181 (1894); 8 N.J. Pract. § 1609 (1950); 1 Barbour, Chancery Practice (2d ed. 1874), 333; 2 Daniell, Chancery Pleading & Practice (6th Am. ed. 1894), [*]996; Hughes, Equity Draftsman (4th Am. ed. 1861), 823; 30 C.J.S., Equity, § 616.
Under this practice the parties may bring on an issue before the court and have it determined, all in a very simple fashion, namely, by serving motion papers on the attorneys to the cause, R.R. 4:5-2(a), Galler v. Slurzberg, 22 N.J. Super. 477, 486, 487 (App. Div. 1952) (note the cautionary word in Schnitzer and Wildstein, N.J. Rules Serv. A IV-85), without being subjected to the trouble and delays of instituting a separate plenary or (where the rules permit, R.R. 4:117-1, 4:85) summary action. One of the ultimates toward which the law is always pressing today in matters of procedure is simplicity. Mindful of that, we are not at all disposed to disapprove of this procedural device in situations where it is appropriate, provided the rights of the parties are duly safeguarded.
*572 R.R. 4:4-4 and 4:4-5 have no bearing here. This was a motion. The question then is whether the court had jurisdiction over Mrs. Romano on the motion. The answer is simply that her then attorney appeared for her at the time. Indubitably he was and had been for months the attorney who represented her individually in connection with the estate (we are disregarding in this opinion a letter submitted by him to the trial court ex parte). Indeed, on two occasions before and once after February 11, he had appeared in court on behalf of the executors, including herself, after they had been removed from office.
The order of February 11 recites that the matter came on to be heard in the presence of himself as "attorney for" her. At the time of the hearing, as was said on the argument before us, he succeeded in having included in the order two paragraphs protecting certain claims of hers, and in fact, as stated in an affidavit by the attorney for the Howard Savings Institution, made vigorous objection before the court with respect to the order, as a result of which it had to be revised.
The recital in the judgment as to his appearance on her behalf constitutes presumptive proof of the matter recited. See Annotation, 68 A.L.R. 385. To meet this presumption and the above-stated circumstances which strongly buttressed it, she presented merely her own affidavit, made on hearsay (without indicating in any way the source of her information), that this attorney on February 11
"appeared before the Court and advised that he had not been able to contact me in connection with the proceeding then before the Court and that he had no authority to speak for me in connection therewith."
We reject the hearsay (R.R. 4:44-4; Ash v. Frazee, 37 N.J. Super. 542, 547 (App. Div. 1955); State v. Tune, 13 N.J. 203, 223 (1953)), and find that the presumptive effect of the recital was not rebutted, and moreover that her attorney affirmatively participated in the hearing on her behalf, acting in her interest as he deemed appropriate. A party who seeks to have an order set aside must assume the *573 burden of establishing facts warranting the relief. 7 Moore, Federal Practice (2nd ed.), 328; 49 C.J.S., Judgments, § 297. Mrs. Romano did not carry that burden here.
It should be observed that a motion for relief from a judgment or order may be heard by the court on affidavits, R.R. 4:44-4, though usually where such a motion hinges upon a factual issue and credibility is involved, the court should, in the exercise of the discretion conferred by the rule, take oral testimony. Cf. 7 Moore, supra, 330. However in this case in the face of the circumstances before the court, opposed merely by hearsay, we see no misuse of discretion.
We therefore need not even deal with other arguments advanced by defendants, as for instance, the argument that the mailing of the petition and order to show cause to Mrs. Romano constituted service upon her, even though they were later returned by the Post Office, the envelope being marked "Unclaimed." See R.R. 4:5-2, taken from Rule 5(b) of the Federal Rules of Civil Procedure; 2 Moore, Federal Practice (2nd ed.), § 5.07; cf. Borgia v. Board of Review, 21 N.J. Super. 462, 467 (App. Div. 1952).
It is finally urged on her behalf that the order of February 11, 1955, entered in the proceeding by the Howard Savings Institution for the approval of the sales, is void because of a failure of procedural due process. The contention here is that the trial court's attention in that proceeding was not directed to a due consideration of her rights under paragraph Eleventh of the will. But the matter was first brought before the court in the present action by the counterclaim, and a scheme was devised, as disclosed in the final judgment, to protect those rights. That scheme did not work out, even though after further litigation the court extended the time allowed for working it out. So, in a later order entered in this cause on November 23, 1953, another plan was provided, namely, of requiring offers for the realty recommended by a certain real estate agent to be submitted to the court for its approval, and further (we think, it is to be assumed) of affording the children an *574 opportunity to exercise their preference, if they chose to, at the time of the submission. That plan fell through also. Then the Howard Savings Institution brought on the proceeding under consideration, advancing still another plan (all this is the product, it should be observed, of unfortunate experiences in earlier phases of the litigation). Like the preceding plan it too contemplated, we think, that the children would be afforded an opportunity to exercise their preference on the return day of the application. As above stated, paragraph Eleventh of the will was set out in the petition of the Howard Savings Institution, and the petition sought a judgment free from any preference. Under the circumstances presented, there was no denial of due process.
We conclude, as we concluded on the motion for leave to appeal, that there is no merit to Mrs. Romano's contentions.
The order of Judge Sullivan will be affirmed.