**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1995-19

PATRICK AND EMILY
RAMELLA,

     Plaintiffs-Respondents,

v.

JESSE & SONS LAWN
SERVICES, LLC, and
Estate of JESSE
IOFFREDO,

     Defendants,

and

COLETTE IOFFREDO,

     Defendant-Appellant.

_____

         Submitted February 14, 2022 – Decided February 24, 2022

         Before Judges Fasciale and Firko.

         On appeal from the Superior Court of New Jersey, Law
         Division, Morris County, Docket No. L-2410-15.

Mensching & Lucarini, PC, attorneys for appellant (John J. Mensching, on the briefs).

Mandelbaum Salsburg, PC, attorneys for respondents (Melody M. Lins, of counsel and on the brief; Arthur D. Grossman, on the brief).

PER CURIAM

Defendant Colette Ioffredo (Colette)[1] appeals from two orders. First, a November 1, 2019 order (a) entering judgment in favor of Patrick and Emily Ramella (collectively plaintiffs), and (b) adding Colette as a defendant, pursuant to the terms of a settlement agreement she negotiated while a non-binding arbitration had been pending, and amending the caption of the judgment to reflect the passing of defendant "Jesse Ioffredo" (Jesse) by substituting Jesse's name with "Estate of Jesse Ioffredo." And second, a December 6, 2019 order awarding unopposed counsel fees in plaintiffs' favor. We affirm.

I.

In 2013, plaintiffs hired Jesse & Sons and Jesse to build a retaining wall on plaintiff's property. Jesse & Sons failed to build the wall in accordance with an approved engineering plan. Plaintiffs filed a complaint against defendants,

---

[1] To avoid confusion between defendant Colette Ioffredo and her late husband Jesse Ioffredo, we refer to them by using their first names. We mean no disrespect in doing so.

Jesse & Sons and Jesse, alleging breach of contract, fraud, and violations under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -227. Private counsel filed an answer to the complaint on behalf of Jesse & Sons and Jesse and asserted a counterclaim seeking payment for services rendered. A law firm retained by an insurance company then filed a second answer on behalf of Jesse & Sons and Jesse. Mr. Michael Maselli, Esq. handled the defense from that firm.

The case never reached a trial. Plaintiffs, their counsel, and Mr. Maselli appeared for the non-binding arbitration on October 12, 2017. Jesse and Colette did not appear. In lieu of arbitrating the case that day, counsel engaged in settlement negotiations. Plaintiffs refused to settle without Colette's involvement due to Jesse's terminal illness and because the proposed settlement called for installment payments to be made over time. Plaintiffs required Colette to make payments after her husband died. The parties reached a settlement, and the judge marked the case settled four days later. Plaintiffs then executed the agreement on November 30, 2017, and defendants—Jesse & Sons, Jesse, and Colette—executed the agreement on January 5, 2018. Jesse & Sons and Jesse made some payments then defaulted. Jesse died in January 2019, and despite notice of default, Colette, who made some payments, failed to satisfy her continued obligation under the agreement.

3

Plaintiffs filed a motion to amend the caption, pursuant to the settlement agreement, to name Colette as a defendant and to substitute Jesse's name for his estate. Colette actively opposed the motion, repeatedly appeared in court, and never raised her belated contention that the court lacked personal jurisdiction over her. The judge took testimony on the return date from Maselli and Colette, asked counsel to submit documentation, and gave the parties the opportunity to file supplemental submissions. Thereafter, the judge conducted a second hearing on plaintiffs' motion. After giving Colette a full opportunity to be heard about the terms of the agreement, the judge made credibility determinations and found Colette agreed to the terms of the settlement. He stated:

> [B]ased on the February email and a preponderance of the credible evidence as testified to by . . . Maselli, the [c]ourt finds that [Colette] did in fact agree to the terms as were set forth in the agreement. She either signed that document herself or authorized someone to sign it on her behalf and indicated to . . . Maselli that she was going to sign or execute that document as he testified.
>
> . . . .
>
> [Maselli's] testimony was consistent. His testimony was supported by his telephone records . . . . Those were critical records because they provided additional context to the conflict in testimony between the parties.

A-1995-19

It was clear . . . Maselli was engaged with both [Jesse] and [Colette] on a regular and ongoing basis regarding this matter.

The judge then granted plaintiffs' unopposed motion for counsel fees.

On appeal, Colette raises the following points, which we have renumbered:

POINT I

THE TRIAL COURT DID NOT PROPERLY OBTAIN IN PERSONAM JURISDICTION OVER [COLETTE]. (Not raised below).

POINT II

THE [JUDGE] ERRED IN CONCLUDING THAT [COLETTE] ENTERED INTO AN ENFORCEABLE SETTLEMENT WITH PLAINTIFFS[.] (Partially raised below).

POINT III

THE STATUTE OF FRAUDS APPLIES AND PRECLUDES THE ENTRY OF JUDGMENT(S) AGAINST [COLETTE.] (Not raised below).

POINT IV

THE [JUDGE] ERRED IN ASSESSING ATTORNEY[S'] FEES AND COSTS AGAINST [COLETTE.] (Not raised below).

At the outset, we note Colette is raising the following arguments for the first time on appeal: (1) that the Law Division improperly exercised in personam

5

jurisdiction over her, (2) that the Statute of Frauds, N.J.S.A. 25:1-15, precludes entry of judgment against her, and (3) the judge erred by awarding counsel fees and costs to plaintiffs. When a party fails to raise an issue to the trial judge, we "will decline to consider" those questions "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). These arguments are therefore waived as they are improperly presented before us; however, we will nonetheless address their merits.

II.

Colette asserts that "plaintiffs never amended, or moved to amend, their [c]omplaint to advance any cause of action" against her and that she did not receive service. Thus, the Law Division improperly exercised in personam jurisdiction over her. While Colette is correct that plaintiffs should have amended their complaint to advance a cause of action against her, Colette ultimately consented to the jurisdiction of the trial court by actively appearing in the action and participating in the litigation without objection.

Colette was aware of the lawsuit against her husband. She corresponded with defense counsel regarding the underlying lawsuit's settlement discussions.

6

Colette's opposition to the motion to amend the caption under the settlement agreement did not assert lack of personal jurisdiction as an affirmative defense, and even though the motion judge conducted two hearings and gave the parties additional opportunities to supplement their papers after each hearing, she remained involved in the proceedings. Colette submitted additional submissions to the motion judge, none of which asserted a lack of personal jurisdiction defense.

We have advised litigants that a defendant consents to the jurisdiction of New Jersey by appearing in an action and participating in the litigation without objection. See Hupp v. Accessory Distribs., Inc., 193 N.J. Super. 701, 709 (App. Div. 1984). This aligns with the principle that "lack of personal jurisdiction is a waivable defense." Bascom Corp. v. Chase Manhattan Bank, 363 N.J. Super. 334, 341 (App. Div. 2003); see also Mitzner v. W. Ridgelawn Cemetery, Inc., 311 N.J. Super. 233, 239 (App. Div. 1998) (establishing that a "lack of personal jurisdiction [defense] is . . . subject to waiver"). But, ultimately, the inquiry hinges on whether the requirements of due process were met. See Rosa v. Araujo, 260 N.J. Super. 458, 463 (App. Div. 1992). Here, Colette's due process protections were met.

A-1995-19

Due process requires "adequate notice, opportunity for a fair hearing and availability of appropriate review."  Schneider v. City of E. Orange, 196 N.J. Super. 587, 595 (App. Div. 1984).  Thus, if a party knows about the litigation prior to being added as a defendant, and if said defendant has an opportunity to be fully heard, then the party was given due process.  See Bussell v. DeWalt Prods. Corp., 259 N.J. Super. 499, 509-11 (1992) (stating that parties need not formally serve each defendant in a case where the requirements of due process are otherwise met).

Colette was clearly informed of the lawsuit throughout the litigation process.  She actively participated in discussions with defense counsel during settlement negotiations at the courthouse.  She was also informed of the proceedings when plaintiffs filed their initial motion to add her as a defendant, relying on the settlement agreement.  She further participated in two oral arguments and, in fact, testified in both proceedings.  Nothing in the record indicates at any point prior to this appeal that she disputed the trial court's exercise of personal jurisdiction over her.  She had a full opportunity to be heard as to her assertion that she did not reach a settlement with plaintiffs and had notice of the lawsuit from its early stages, including notice of her eventual

involvement in the case. She thus consented to the trial court's exercise of personal jurisdiction, and the judge afforded her due process.

III.

Colette also asserts that the judge erred in concluding she was a party to the settlement agreement. She primarily asserts that she was not a party until after the settlement was finalized. But Colette—despite her apprehension—agreed to assume responsibility for the parties' settlement in the event of her husband's death. There is substantial evidence in the record to support the judge's finding that the agreement is enforceable against her.

Our review of a judge's factual findings is limited. Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974). We will "not disturb the factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). And, this court is especially deferential when the evidence is largely testimonial and involves an assessment of witness credibility. Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989).

9

A.

Settlement agreements—like the one at issue here—are to be treated and enforced like any other contract.  See Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (stating that "[a]n agreement to settle a lawsuit is a contract"). Accordingly, settlement agreements are enforceable if the "parties agree on essential terms and manifest an intention to be bound" by them.  Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).

The motion judge heard argument on the issue of the settlement agreement's enforceability against Colette.  The judge concluded, after taking testimony at the hearing, that Colette's assertions that she was not made aware of the agreement were not credible because there were phone records that clearly contradicted those statements.  The judge also determined that Colette was involved in the case.  And he found that there "certainly appeared to be an intent, subsequent to the death of [Jesse]" for Colette "to continue to make payments" per the settlement agreement.  Thus, she "did in fact agree to the terms as were set forth in the agreement."

The motion judge's conclusion that Colette manifested an intent to be bound to the settlement agreement is supported by the record.  First, Colette signed the settlement agreement.  Even though she expressed apprehension

about being added on as a party, she ultimately agreed to do so via email. Further, her husband's counsel informed her of the agreement and that she needed to sign it. Second, Colette continued making settlement payments to plaintiffs, even after Jesse's passing in January 2019. She also testified that she did try to cancel at least one of the payments.

While Colette was certainly reluctant to agree to the settlement agreement, she eventually agreed on the essential terms of the settlement agreement and manifested an intention to be bound by them. See Weichert Co. Realtors, 128 N.J. at 435. Her assertions to the contrary do not refute the judge's findings nor show those findings are "unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Seidman, 205 N.J. at 169 (quoting Cesare, 154 N.J. at 412). Accordingly, we see no abuse of discretion.

B.

Colette contends—for the first time—that the Statute of Frauds precludes enforcement of the contract because the settlement agreement is a guaranty contract. This argument is misguided. N.J.S.A. 25:1-15 states: "[a] promise to be liable for the obligation of another person . . . to be enforceable, shall be in a writing signed by the person assuming the liability or by that person's agent."

A-1995-19

Here, the settlement agreement was entered into by plaintiffs, Jesse & Sons, Jesse, and Colette. Colette did not guarantee a debt within the meaning of the statute; she participated in and then subsequently agreed to be bound by the terms of the settlement agreement from the outset. Thus, the Statute of Frauds does not preclude enforcement of the settlement agreement.

IV.

We briefly address Colette's contention that the trial judge abused his discretion in awarding fees because they were not reasonable, and he failed to conduct the requisite analysis.

This court reviews an award of attorneys' fees under an abuse-of-discretion standard. Packard-Bamberger & Co., Inc. v. Collier, 167 N.J. 427, 443-44 (2001). This court has been instructed to disturb an award of attorneys' fees "only on the rarest of occasions, and then only because of a clear abuse of discretion." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co., Inc., 167 N.J. at 444).

Plaintiffs filed a notice of motion to amend judgment against defendants to include attorneys' fees and costs incurred after May 22, 2018. The motion was unopposed. The trial judge entered an order granting said fees. The

settlement agreement included a provision governing recovery for "reasonable attorneys' fees and costs associated with securing said judgment."

The trial judge did not abuse his discretion in awarding plaintiffs legal fees and costs sought. The certifications provided to the trial judge showed the time spent and services rendered. The judge concluded the adjustment was reasonable in light of the fee reduction out of the monies due and owing to plaintiffs. While the judge does not appear to have conducted a thorough review of each factor of R.P.C. 1.5(a), it was reasonable for the judge to conclude pursuant to the settlement agreement, in an unopposed motion, that attorneys' fees were reasonable to grant.

Colette's remaining contentions are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1995-19