**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4007-22

RIALTO-CAPITOL
CONDOMINIUM
ASSOCIATION, INC.,

      Plaintiff-Respondent,

v.

BALDWIN ASSETS ASSOCIATES
URBAN RENEWAL COMPANY,
LLC, THE RIALTO-CAPITOL
URBAN RENEWAL COMPANY,
LLC, METRO ASSET II, LLC,
METROVEST EQUITIES, INC.,
GEORGE FILOPOULOS,
PATRICIA FILOPOULOS, PHILIP
FIERRO, ISMAEL LEYVA
ARCHITECTS, PC, GOLDSTEIN
ASSOCIATES, PLLC, a/k/a GACE
CONSULTING ENGINEERS,
PC, TURNER CONSTRUCTION
COMPANY, COMMODORE
CONSTRUCTION CORP.,
WATERPROOFING SYSTEMS
NORTHEAST, LLC, SPERANZA
BRICKWORK, INC., BEDROC
CONTRACTING, ERC CLASSIC
RESTORATION, LLC, JOVIN

DEMO, AGD CONSTRUCTION,
CCC RESTORATION, INC.,
ISRAEL BERGER & ASSOCIATES,
INC., DAVIDSON & HOWARD,
INC., SCHNELLBACHER-SENDON
GROUP, LLC, ZAKALAK
ASSOCIATES, COMPONENT
ASSEMBLY SYSTEMS, INC.,
B.J. MCGLONE & COMPANY,
WINDSTRUCT, INC., CHAMPION
ALUMINUM CORP., d/b/a
CHAMPION WINDOW AND
DOOR and NGU, INC., d/b/a
CHAMPION ARCHITECTURAL
WINDOW AND DOOR,
LPL CONTRACTING CORP.,
METROVEST CONSTRUCTION
CORP., MIDWEST MECHANICAL
CONTRACTORS OF NEW
JERSEY, INC., JERSEY STATE
ENERGY CONTROLS, INC.,
NATIONAL AIR BALANCE
COMPANY, INC., J&J LIMITED,
INDEPENDENT SHEET METAL
CO., LKU GROUP, INC.,
VECTOR STRUCTURAL
PRESERVATION CORP.,
ENVIRONMENTAL HEALTH
INVESTIGATIONS, INC.,
GUZMAN GENERAL
CONSTRUCTION, GTC
RESTORATION, INC., and
IGH RESTORATION,

      Defendants,

and

A-4007-22

SKYLINE WINDOWS, LLC

      Defendant-Appellant.

_____

TURNER CONSTRUCTION
COMPANY,

      Third-Party Plaintiff,

v.

MIDWEST MECHANICAL
CONTRACTORS OF NEW
JERSEY, INC., SKYLINE
WINDOWS, LLC, DAVIDSON
& HOWARD, DEL TURCO
BROTHERS, INC., S.A.
COMUNALE, STAR-LO
ELECTRIC, INC., and V.A.L.
FLOOR, INC.,

      Third-Party Defendants.

_____

SKYLINE WINDOWS, LLC,
and MIDWEST MECHANICAL
CONTRACTORS OF NEW
JERSEY, INC.,

      Fourth-Party Plaintiffs,

v.

WINDSTRUCT, INC.,
CHAMPION WINDOW AND
DOOR, STATE CONTROLS
COMPANY, NATIONAL

3

AIR BALANCE COMPANY,
INC., J&J LIMITED and
INDEPENDENT SHEET
METAL CO.,

     Fourth-Party Defendants.

_____

Argued November 9, 2023 – Decided April 25, 2024

Before Judges Accurso and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4994-13.

Steven A. Weiner argued the cause for appellant (O'Toole Scrivo, LLC, attorneys; Steven A. Weiner, of counsel and on the brief; Adam W. Flannery, on the brief).

John R. Sawyer argued the cause for respondent (Stark & Stark, attorneys; John R. Sawyer, of counsel and on the brief).

PER CURIAM

In this construction-defect case, defendant Skyline Windows, LLC (Skyline) appeals from an order denying its motion to enforce a settlement agreement and dismiss the claims against it. Skyline contends the motion judge erred in concluding Skyline was not included in the clause of the settlement agreement in which plaintiff Rialto-Capitol Condominium Association, Inc.

4

released its claims against subcontractors "enrolled" in the contractor consolidated insurance program (CCIP) of defendant general contractor Turner Construction Company (Turner). We agree and, accordingly, reverse.

I.

Plaintiff is a non-profit corporation responsible for operating the Rialto-Capitol Condominium buildings (the Property). Turner entered into agreements to perform certain construction work at the Property.

On May 11, 2006, Skyline and Turner entered into a contract (Contract) in which Skyline agreed to perform, as a subcontractor, "Window Replacement/Sealant/Blocking Work." Skyline "committed to fabricating and delivering 225 windows" and "installing 210 windows" weekly, starting no later than May 1, 2006, and ending no later than July 15, 2006. Turner and Skyline agreed commercial general liability insurance coverage would be in place until the completion and acceptance of Skyline's work and would "be provided through a consolidated insurance program arranged by Turner." See Vigilant Ins. Co. v. Travelers Prop. Cas. Co. of Am., 243 F. Supp. 3d 405, 414 n.11 (S.D.N.Y. 2017) ("A wrap-up policy, sometimes referred to as . . . a [CCIP], is often used in large construction projects, and involves the developer, general contractor, and all of the subcontractors being listed as named insureds under a

A-4007-22

single policy that covers a single project.").  The Contract incorporates a CCIP Insurance Manual (Manual) as a contract document.

The Manual identifies Turner as the "CCIP Sponsor" and Aon Risk Services (Aon) as the "CCIP Administrator."  Section three of the Manual defines "Enrolled Parties/Enrolled Subcontractor" as "[t]hose eligible [s]ubcontractors who have submitted all necessary enrollment information as detailed in Section 6 and have been accepted into the CCIP as evidenced by a Welcome Letter and Certificate of Insurance."  Section 6A of the Manual defines "Enrolled Parties" as:  "Turner, eligible Subcontractors, and Sub-subcontractors who enroll in the CCIP and such other persons or entities as Turner at its sole discretion may designate (each such party who is insured under the CCIP is collectively referred to as an 'Enrolled Party')."  The Manual defines "Eligible Parties/Eligible Subcontractor" as "Parties performing labor or services at the Project Site who are eligible to enroll in the CCIP unless an Excluded Party."  It states that "[a]t the discretion of Turner, or subject to State regulations, the following parties will be excluded . . . . Subcontractors, and any of their respective sub-subcontractors, who do not perform any actual labor on the Project Site."  The Manual states "Turner will furnish [various] coverages for the benefit of all Enrolled Parties performing Work at the Project Site,"

including commercial general liability and excess liability coverage. The Manual defines "Welcome Letter" as "[a] document issued by the CCIP Administrator, which confirms acceptance/enrollment of the applicant into the CCIP" and "Certificate of Insurance" as "[a] document providing evidence of existing coverage for a particular insurance policy or policies."

The Manual also included the following "DISCLAIMER": "The information in this manual is intended to outline the CCIP. If any conflict exists between this manual and the CCIP insurance policies, the CCIP insurance policies will govern."

Turner issued to Skyline a Notice of Subcontractor award, dated May 24, 2006. On that document, Turner placed an X next to the sentence stating, "Check here if the subcontractor is to be enrolled in the CCIP." Aon sent Skyline a Welcome Letter dated June 8, 2006, confirming Skyline "ha[d] been enrolled" in the CCIP. Aon enclosed with the letter "a Certificate of Insurance evidencing [Skyline's] coverage for Worker's Compensation, General Liability, Excess & Umbrella." The Certificate of Insurance named Liberty Mutual as the provider of the commercial general liability coverage and National Union Fire Insurance Company as the provider of the excess liability coverage. It listed the commercial general liability policy number as "RG2-625-XXXXXX-016" and

7

the excess liability policy number as "BE44XXXXX."[1]  Both policies had an effective date of February 15, 2006, and an expiration date of December 15, 2007.

On or around July 11, 2006, Turner issued another Notice of Subcontractor Award.  Instead of checking the sentence "Check here if the subcontractor is to be enrolled in the CCIP" on that document, Turner placed an X next to a sentence stating, "Check here if the subcontractor will be an excluded prime tier fabricator with eligible (enrolled) sub-tier erector/installer."  Denise Gaskill Bianchi, a former Turner employee who was involved in coordinating the CCIP, testified during a deposition that Skyline was "excluded from the program because they didn't have any on-site payroll" and its "sub-tier" Windstruct had been "enrolled because they were providing the labor on site."

On or around April 5, 2007, and again on May 1, 2007, Anna Gavron, another Turner employee, faxed a note to Skyline, stating "[t]he GL Endorsement [was] missing for Skyline" and "[a]s an Excluded sub, this endorsement is a must since [Skyline was] working on [its] own insurance coverage."  Mark Azierski, Skyline's project manager for its work at the

---

[1]  Insurance policy numbers are confidential personal identifiers pursuant to Rule 1:38-6(a).  To preserve that confidentiality, we use "X" in place of some of the digits in the policy numbers.

Property, wrote on the faxed note, "Call Anna [and] tell her we don't know what she is talking about. We are <u>not</u> an 'excluded sub,' and are <u>not</u> working on our own insurance coverage."[2] Azierski later testified he was not aware Turner had issued a second Notice of Subcontractor Award and did not "recall anybody ever characterizing [Skyline] as a fabricator." He also certified that "to our knowledge, no change orders were ever issued by Turner cancelling Skyline's participation in the Turner CCIP." On May 23, 2007, Skyline administrative assistant Marcy McGowan faxed to Turner a "Blanket Endorsement for Additional Insured" in lieu of the endorsement Turner had requested.

In October 2013, plaintiff sued multiple defendants, including Skyline and Turner, for damages based on negligence in the design, repair, and construction of the condominium buildings. In September 9, 2014 and December 4, 2014 letters, Skyline's counsel tendered Skyline's defense in the case to Liberty Mutual pursuant to the CCIP. In both letters, Skyline stated its coverage claim was based on Turner's CCIP and expressly referenced CCIP policy number

---

[2]  The following was placed on the faxed note in different handwriting: "excluded because Windstruct is our installer," "not enrolled in the CCIP Ins. program," and "still need to submit COI. – which we did [b]ut need this endorsement." The record does not indicate who wrote that information on the faxed note. Azierski testified he did not recognize it as the handwriting of a Skyline employee.

RG2-625-XXXXXX-016. In a May 14, 2015 letter, Liberty Mutual stated it had reviewed the complaint and "the terms of the policy that Liberty Mutual issued to [Turner] that provide coverage under a [CCIP]" and agreed to provide Skyline with a defense subject to a reservation of rights, which it never asserted. In the letter Liberty Mutual confirmed it would defend Skyline in the lawsuit under CCIP policy number RG2-625-XXXXXX-016, covering the policy period of February 15, 2006, to December 15, 2007.

In a May 16, 2016 order, the trial court granted Skyline's summary-judgment motion and dismissed plaintiff's complaint against Skyline with prejudice.

On September 17, 2018, the day trial was scheduled to begin, the remaining parties continued their mediation efforts, agreed to a settlement, and placed its essential terms on the record. Turner's counsel advised the court, "Turner and the plaintiffs have agreed to settle all claims against Turner and the subcontractors who are here and actually, any of the Turner subcontractors" and that plaintiff had "agree[d] to dismiss all CCIP . . . related claims. CCIP being defined [as] certain insurance policies issued by Liberty Mutual Insurance Company . . . , provided, however, plaintiff is free to pursue . . . all concrete related claims that are not within Turner's . . . scope of work." Turner's counsel

clarified the settlement included "any other policies emanating from the CCIP." The parties present, including plaintiff, agreed to be bound by the settlement. Because it had been dismissed from the case, Skyline was not present.

The settlement agreement was memorialized in writing on December 4, 2018 (the Agreement). The Agreement contained confirmation that Liberty Mutual had "issued a Commercial General Liability policy, No. RG2-625-XXXXXX-016, for the policy period from February 15, 2006 to December 15, 2007, to Turner (the 'Liberty CCIP')" and that National Union had "issued a Commercial Umbrella Liability Policy, No. BE44XXXXX, to Turner for the Policy Period of November 1, 2005 to November 1, 2006," which along with a subsequently issued umbrella policy was named "(collectively, the 'CCIP Excess Policy')." In the Agreement, plaintiff agreed to release "the Settling Defendants, Carriers, the CCIP Entities and their insurers . . . with respect to any and all claims related to . . . the Actions, the Project, the Contract, the Subcontracts, and/or the Sub-subcontracts." The Agreement defined "CCIP Entities" as "all subcontractors or other entities enrolled in the Liberty CCIP and CCIP Excess Policy, regardless of whether such entity is named in the Actions."

The "Agreement and its provisions" were to be "construed according to their common or ordinary meaning and without interpretive favor or prejudice

to any Party." The Agreement contained express language stating "any uncertainty or ambiguity [in the Agreement] shall not be construed against any one Party or several Parties but shall be construed as if all Parties to this Settlement Agreement jointly prepared this Settlement Agreement" and "[n]one of the Parties shall be considered the drafter of this Settlement Agreement or any provision of the Settlement Agreement, or the Releases for the purpose of any . . . construction that would or might cause any provision to be construed against the drafter thereof."

On October 2, 2020, we affirmed in part and reversed in part the May 16, 2016 order granting Skyline summary judgment and remanded the case. Rialto-Capitol Condo. Ass'n, Inc. v. Baldwin Assets Assocs. Urban Renewal Co., No. A-3502-18 (App. Div. Oct. 2, 2020) (slip op. at 14). In a March 25, 2021 order, the trial court issued an order restoring the complaint as to "the remaining, non-defaulted, non-settling defendants."

In a January 7, 2022 email sent to Skyline's attorney, plaintiff's attorney asserted, "[r]ecently, evidence has been found that clearly establishes that Skyline Windows was excluded from the CCIP program . . . [and] [t]herefore, Skyline Windows is not covered by the settlement agreement between [plaintiff] and Turner which covered 'CCIP [E]ntities,' defined as contractors that were

12

enrolled in the CCIP program." In a January 23, 2022 responding email, Skyline's counsel maintained Skyline was a part of the settlement as an enrolled CCIP Entity. Skyline's counsel pointed out the contract between Turner and Skyline provided Skyline would be a part of Turner's CCIP, Skyline had paid the costs associated with its enrollment in the CCIP, Aon had provided Skyline with evidence of coverage under the CCIP by sending Skyline a Certificate of Insurance pursuant to the CCIP Manual, Skyline previously had tendered its defense in the lawsuit to Liberty Mutual and Liberty Mutual had accepted that tender specifically referencing the coverage under the CCIP policy, and Liberty Mutual also had provided workers' compensation coverage for Skyline – individual facts plaintiff does not dispute.

In a January 28, 2022 letter, Skyline sought reinstatement of the defense Liberty Mutual had provided. In a February 28, 2022 letter in response, Liberty confirmed it previously had provided a defense to Skyline, stated the settlement between the parties had exhausted the Liberty Mutual policy limits, and directed Skyline to send any further correspondence regarding the lawsuit to "National Union, as the excess carrier." In a revised version of the letter, Liberty Mutual explained that "[b]y agreeing to Skyline's defense via the reservation of rights letter issued 5/14/15, [Liberty Mutual] confirmed Skyline's enrollment in the

CCIP." Liberty Mutual also confirmed Skyline's enrollment in the CCIP in a March 1, 2022 email. The excess carrier subsequently retained counsel to defend Skyline.

On March 1, 2022, plaintiff moved to strike Skyline's answer and enter default against Skyline for failure to defend pursuant to Rule 1:2-4. Skyline cross-moved to dismiss the complaint and deny entry of default against Skyline. On June 10, 2022, the motion judge denied plaintiff's motion without prejudice "so that the parties could engage in discovery to try to see what factual record they could make regarding the intent of the parties, the counsel for Liberty and plaintiff, when they settled certain claims."

On December 23, 2022, Skyline moved to enforce the Agreement and dismiss the complaint against it. During argument of defendant's motion, the motion judge acknowledged the undisputed facts that Liberty Mutual had agreed to defend Skyline before the settlement and the CCIP excess insurer had agreed to defend Skyline after the settlement. The judge scheduled a Rule 104 hearing because he "want[ed] to know what the intent was when they used the word 'enrolled'" in the Agreement.

At the Rule 104 hearing, the attorney for plaintiff who had been involved in negotiating the Agreement testified on behalf of plaintiff. He testified that at

the September 17, 2018 hearing, he understood plaintiff "was settling all claims related to anybody involved in the CCIP." He also testified that before he agreed to the final draft of the Agreement, which included "CCIP Entities" in the list of those whom plaintiff would release, he had reviewed the CCIP Manual, including the definitions set forth in the manual, and "understood what enrolled meant as [defendant counsel] put it in there, that they wanted the agreement to apply to all Turner's contractors that had been enrolled in the CCIP as the manual details."[3] Having conducted that review, he advised the other counsel the language proposed in the draft agreement was acceptable. The attorney for Turner who had been involved in negotiating the agreement also testified. He testified the parties had intended to include in the settlement all claims against any contractor that was covered by a CCIP insurer, including Liberty Mutual, whether or not the contractor had been involved in the mediation.

The motion judge denied Skyline's motion in a decision placed on the record and an order entered on July 14, 2023. The judge found the term "CCIP

---

[3] According to plaintiff's counsel in his January 7, 2022 email, the "evidence" purportedly indicating Skyline had been excluded from the CCIP program was discovered "recently." Thus, three years before, in 2018 when they settled the case, plaintiff and its counsel apparently had no reason to believe Skyline was not one of Turner's CCIP-enrolled contractors and, thus, no reason to believe Skyline was not included in the settlement.

enrolled" was an unambiguous "term of art in the usage of the insurance industry" and that "Skyline was not enrolled in the CCIP program." The judge also found "if you want to say it's not a technical term in the industry and it doesn't have any specific meaning or usage based upon this hearing record, . . . that would mean that the term is ambiguous." Despite the clause of the Agreement expressly providing that any ambiguity would not be construed against any one party and no party would be considered the drafter of the Agreement or any of its provisions, the judge held "this part of the settlement agreement was drafted by the defendants" and he "constru[ed] it against them."

On leave granted, this appeal followed.

II.

"Settlement of litigation ranks high in our public policy." Savage v. Twp. of Neptune, 472 N.J. Super. 291, 305 (App. Div. 2022) (quoting Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). We consequently "strain to give effect to the terms of a settlement wherever possible." Capparelli v. Lopatin, 459 N.J. Super. 584, 603 (App. Div. 2019) (quoting Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008)).

"A settlement agreement between parties is a contract governed by basic contract principles." Capparelli, 459 N.J. Super. at 603. "A basic tenet of

contract interpretation is that contract terms should be given their plain and ordinary meaning." Savage, 472 N.J. Super. at 305 (quoting Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 321 (2019)). "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Capparelli, 459 N.J. Super. at 604 (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "A contract is ambiguous if its terms are 'susceptible to at least two reasonable alternative interpretations.'" Ibid. (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)).

"In the absence of a factual dispute, the interpretation and enforcement of a contract, including a settlement agreement, is subject to de novo review by the appellate court." Savage, 472 N.J. Super. at 306. The "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The language of the Agreement is clear and unambiguous. In the Agreement, plaintiff agreed to release "the Settling Defendants, Carriers, the CCIP Entities and their insurers . . . ." The Agreement expressly defined "CCIP

Entities" as "all subcontractors or other entities enrolled in the Liberty CCIP and CCIP Excess Policy, regardless of whether such entity is named in the Actions." The "Liberty CCIP" was the Commercial General Liability Policy No. RG2-625-XXXXXX-016 Liberty Mutual had issued to Turner for the CCIP. "CCIP Excess Policy" included the Commercial Umbrella Liability Policy No. BE44XXXXX issued by National Union to Turner for the CCIP.

There's nothing complicated or ambiguous about the word "enrolled." Construing that word according to its common and ordinary meaning, as we must pursuant to the express terms of the Agreement and the basic tenets of contract law, and considering the record evidence, we conclude Skyline was enrolled in the Liberty CCIP and CCIP Excess Policy and, thus, was a CCIP Entity as defined in and released by plaintiff in the Agreement.

The record evidence establishes Skyline was enrolled in the CCIP policies. In the Contract, Turner and Skyline agreed commercial general liability insurance coverage would "be provided through a consolidated insurance program arranged by Turner." According to the Manual, acceptance into Turner's CCIP was "evidenced by a Welcome Letter and Certificate of Insurance." Aon, the CCIP Administrator, issued a Welcome Letter to Skyline,

confirming Skyline "ha[d] been enrolled" in the CCIP and provided Skyline with a Certificate of Insurance, proving Skyline was insured under the CCIP policies.

The record is devoid of any evidence Skyline was unenrolled from the CCIP polices. Plaintiff proffered no correspondence, emails, or any other documents demonstrating Turner had directed Aon or Liberty Mutual or any other CCIP insurer to remove Skyline from the CCIP policies and no documentation that Liberty Mutual or National Union had removed Skyline as an insured under the CCIP policies or otherwise had stopped treating it as an enrolled participant in the CCIP. To demonstrate Skyline had been excluded from the CCIP, plaintiff relies on an undated Turner spreadsheet that indicates Skyline was "[e]xcluded" from an unnamed workers' compensation policy but says nothing about the commercial general liability or excess liability CCIP policies. Turner's internal document and its employee's 2007 faxes aren't proof Turner advised the CCIP insurers to remove Skyline from the CCIP policies or proof that the insurers, in fact, removed Skyline from the policies.

When asked during her deposition whether in the ordinary course of business "some communication" would "go" to a contractor that initially had been issued a welcome letter but subsequently "it was determined that that

contractor should be excluded from the CCIP," former Turner employee Bianchi responded:

> I believe there should be some and usually the carrier would issue a cancelled policy, cancel the policy flat and the communication would have been through Liberty and the subcontractor, but I also believe that purchasing then should have some type of communication. I always encouraged it like if there is a change to make sure that it's reflected into the contract.

The record does not contain any cancelled policy or communication between the CCIP insurers and Skyline advising Skyline it was no longer a participant in or enrolled in the CCIP.

To the contrary, the evidence demonstrates Skyline remained enrolled in the CCIP policies. It is undisputed Liberty Mutual accepted Skyline's tender of the defense of this case and appointed counsel to represent it until its policy limits were exhausted. It is also undisputed National Union, as the CCIP excess liability insurer, subsequently provided a defense and appointed counsel for Skyline. In its February 28, 2022 letter, Liberty Mutual explained that by agreeing to provide Skyline with a defense pursuant to a reservation of rights letter it had issued in 2015, it had "confirmed Skyline's enrollment in the CCIP." Liberty Mutual also confirmed Skyline's enrollment in the CCIP in a March 1,

2022 email. The evidence Skyline was enrolled in the CCIP policies is overwhelming.

The motion judge erred in his legal interpretation of the Agreement and his analysis of the evidence presented regarding Skyline's status as a CCIP Entity. Reviewing the terms of the Agreement de novo and given the overwhelming evidence of Skyline's enrollment in the CCIP policies and lack of evidence of unenrollment, we reverse the order denying Skyline's motion to enforce the Agreement and dismiss plaintiff's complaint against it and remand the case with an instruction the trial court issue an order granting the motion and dismissing plaintiff's complaint against Skyline with prejudice.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21